THE EVANSVILLE AND CRAWFORDSVILLE RAILROAD COMPANY *v.* WOLF.

| 59 | 89 |
|----|----|
| 151 | 44 |

INSTRUCTION TO JURY.—*Evidence of Wilfulness.*—On the trial of an action against a railroad company, for causing the death of a person by the wrongful act or omission of the defendant, it is not error to refuse to instruct the jury as to what evidence would or would not evince a willingness on the part of the defendant to inflict the injury complained of.

NEGLIGENCE.—*Death of Young Child Caused by Wrongful Act.—Contributory Negligence of Parent.*—Where a parent suffered a child two years and nine months old to wander unattended eight hundred and seventy-five feet from its home, near a railroad, and then to go upon the railroad track, and it was injured by a passing train, and died from the injury ; *Held,* that there was such contributory negligence that the parent could not recover against the railroad company for the death, unless the injury was wilfully done.

From the Gibson Circuit Court.

*A. Iglehart* and *J. E. Iglehart*, for appellant.

*W. M. Land* and *A. Dyer*, for appellee.

BIDDLE, C. J.—The complaint of the appellee against the appellant avers, that "August Wolf, aged two years, the son and servant of the plaintiff, and residing with him, was carelessly upon the railroad track of the defendant, near the dwelling-house of the plaintiff, without any fault or negligence on the part of the plaintiff, when the servants of the defendant, in full sight of the child aforesaid, wrongfully, carelessly, negligently and wilfully ran a locomotive upon and over said child, by means of which he was so injured that he died."

Upon the issue joined by a general denial, a trial by jury was had, which resulted in a verdict for the appellee.

A motion for a new trial was overruled, and exceptions reserved; judgment was rendered on the verdict, and an appeal brought to this court.

The appellant relies upon two points for a reversal of the judgment, namely, that,

1. The sixth instruction is a correct statement of the law, and the court erred in refusing to give it.

2. The evidence showed contributory negligence on the part of the plaintiff and his wife, the parents of the deceased child, and there is no evidence tending to show such gross negligence on the part of the defendant, as evinced a willingness to inflict the injury complained of. Hence the evidence was insufficient to sustain the verdict, and a new trial should have been granted.

The sixth instruction, asked and refused, reads as follows: "6. In order that the conduct of the defendant's servants should be sufficient to evince a willingness to inflict the injury, it must appear that there was some gross negligence in failing to perform some act which would or might have prevented the injury, and a mere running of a train at an unusually rapid speed, before the child was

seen, does not necessarily involve or evince a willingness to inflict the injury."

We do not think the court erred in refusing to give the sixth instruction to the jury. It seems to us to invade the province of the jury in deciding upon the weight of evidence. What evidence would or would not evince a willingness to inflict the injury complained of, could not be stated as a proposition of law. It must be left solely to the jury in each individual case.

The evidence is all before us, but it need not be stated in detail. It contains the statement of certain controlling facts, which stand uncontradicted, namely: That the residence of the appellee, which was the home of the child, stood near the railroad track; that the child was two years and nine months old; that it was eight hundred and seventy-five feet from the home of the child to the place where he was injured; that it was four hundred and forty-eight feet from where the engineer first saw the child come from the side of the road on the track to the point where he was injured; that the alarm whistle was instantly blown, and the air-brakes, under the control of the engineer, were immediately applied; that the engine, machinery and brakes were in good condition; that the fireman, upon seeing the danger, went forward upon the pilot and endeavored to rescue the child; that the speed of the train was not unusual, being from twenty-five to thirty miles per hour; that the place where the injury occurred was near the village of Haubstadt; and that the child died from the injury within two days after it was received.

Besides these facts, which appear to be safely established, the engineer running the train testified: "I stopped the train that day in as short a distance as it could have been done with such a train, running at that speed." The fireman and conductor upon the same train testify, that everything was done, as soon as the danger was discovered, to stop the train before the child was

struck.   Several engineers testified, that the train could have been stopped at that place, running at that speed, in from five hundred and fifty to six hundred feet; one, that it could be stopped in four hundred and forty-eight feet, and another stated the shortest distance to be five hundred and twenty-four feet.   None of the above testimony is contradicted.

This abstract, we believe, fully and fairly shows the evidence in the case.

There is no evidence in the case tending in the slightest degree to show that the appellant wilfully injured the child; and it seems to us, that there is very little, if any, which tends to show that the child was injured through the negligence of the appellant; but we are constrained to say, that, if a parent suffers a child two years and nine months old to wander unattended eight hundred and seventy-five feet from its home, situated near a railroad, and then to go upon the railroad track, whereby the child is injured and dies, it is contributory negligence; and, in such a case, the parent can not recover against the railroad company for injuring the child, unless the injury was wilfully done.

This case falls within the principle of that of *The Jeffersonville, Madison and Indianapolis R. R. Co.* v. *Bowen*, 40 Ind. 545, and 49 Ind. 154, which was twice before this court, and most carefully considered, and we can not depart from the doctrine established by those two decisions, and since followed.   *The Toledo, W. & W. R. W. Co.* v. *Shuckman*, 50 Ind. 42; *The Indianapolis & St. Louis R. R. Co.* v. *Stout*, 53 Ind. 143.   See, also, *The Pittsburgh, Fort Wayne and Chicago R. W. Co.* v. *Vining's Adm'r*, 27 Ind. 513; *The Lafayette and Indianapolis R. R. Co.* v. *Huffman*, 28 Ind. 287; *The Citizens St. R. W. Co.* v. *Cary*, 56 Ind. 396.

The unfortunate death of the child, in this case, naturally disturbs our common nature, and awakens deep emotions and sympathies for its innocent sufferings, and we fear that something of this kind, so becoming in its

place, must have affected the jury in deciding upon their verdict; but laws must not be left to the variable moods of human nature; they must be administered according to fixed rules, or justice, which is the highest excellence at which they aim, can not be done; and, without justice, there is no security for human rights.

The judgment is reversed, at the costs of the appellee, and the cause remanded, with instructions to sustain the motion for a new trial, and for further proceedings.